**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-23605-ALTMAN**

**ZURI COOK**,

*Plaintiff*,

*v.*

**MIAMI-DADE COUNTY, FLORIDA**, and
**MIAMI-DADE SHERIFF ROSIE CORDERO STUTZ**,

*Defendants*.
_______________________________________/

**ORDER ON MOTION TO DISMISS**

A police officer brought this action against Miami-Dade County and the Sheriff alleging discrimination and retaliation in violation of Title VII. The Defendants have moved to dismiss. After careful review, we **GRANT in part** and **DENY in part** their motion.

**THE FACTS**

Our Plaintiff, Zuri Cook, was a Miami-Dade County ("MDC") police officer "from 2015 to January 2025." Amended Complaint [ECF No. 33] ¶ 9. In January 2025, Cook became an employee of the newly formed Miami-Dade Sheriff's Office (the "Sheriff"). *See id.* ¶ 10. Cook tells us that, despite "consistently performing his duties in a satisfactory manner," *id.* ¶ 11, the Defendants (MDC and the Sheriff) "retaliated against him for complaining about conduct that violated [Title VII]," *id.* ¶ 12. Specifically, Cook "engaged in protected activity by filing Internal Affairs and/or PCB complaints on February 1, 2024, and March 1, 2024," regarding "patterns of discriminatory treatment of Black males in the unit, discriminatory comments, and racism in the treatment of the community." *Id.* ¶¶ 55, 16. Following his complaints, Cook was "removed from his assignment without formal notice," *id.* ¶ 59, "disciplined for an alleged 'failure to back up an officer,'" *id.* ¶ 60, and "placed [ ] on desk duty without

explanation," *id.* ¶ 61. Cook was ultimately suspended from "August 16, 2024 through August 31, 2024." *Id.* ¶ 29. In addition to this alleged retaliation, Cook also tells us that he was subject to discrimination. He was given "less favorable assignments" because he was black, while white officers received "preferential treatment." *Id.* ¶ 13.

Cook filed the operative complaint in December 2025. In April 2026, the Defendants moved to dismiss. *See* Joint Motion to Dismiss (the "Motion") [ECF No. 43].[1] This Order follows.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Megladon, Inc. v. Vill. Of Pinecrest*, 661 F. Supp. 3d 1214, 1221 (S.D. Fla. 2023) (Altman, J.) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but legal conclusions without adequate factual support are entitled to no assumption of truth." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (cleaned up).

## ANALYSIS

Cook's Amended Complaint asserts four counts: Title VII Retaliation against MDC (Count I); Title VII Retaliation against the Sheriff (Count II); Title VII Racial Discrimination against MDC (Count III); and Title VII Racial Discrimination against the Sheriff (Count IV). *See* Amended Complaint ¶¶ 75–98. The Defendants argue that Cook fails to state a claim of Title VII Discrimination

[1] The Motion is fully briefed and ripe for adjudication. *See* Response in Opposition to the Motion (the "Response") [ECF No. 46]; Joint Reply in Support of the Motion (the "Reply") [ECF No. 52].

or Retaliation and that the entire Amended Complaint is a shotgun pleading. *See generally* Motion. We'll address each argument in turn.

## I. Title VII Discrimination

"Title VII of the Civil Rights Act of 1964 prohibits employers from intentionally discriminating against an employee with respect to [his] 'compensation, terms, conditions, or privileges of employment, because of his race.'" *Goolsby v. City of Monroe*, 2025 WL 3013403, at *3 (11th Cir. Oct. 28, 2025) (quoting 42 U.S.C. § 2000e-2(a)(1)). "To state a race-discrimination claim under Title VII, a complaint need only provide enough factual matter (taken as true) to suggest intentional race discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (cleaned up). The complaint needn't "allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case" because "*McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement." *Ibid.* (cleaned up).[2]

The Amended Complaint meets this standard as to MDC, but not as to the Sheriff. With respect to MDC, Cook provides several specific factual allegations—which, taken together, suggest intentional racial discrimination. He tells us that in 2024 he was suspended for ten days for "fail[ing] to back up an officer" but that white "males of the same or similar rank who engaged in the same or more severe alleged workplace violations did not receive the same discipline as [Cook], if any." Amended Complaint ¶ 33. He also says that one MDC officer, Sgt. Ellison, "repeatedly made

---

[2] The *McDonnell Douglas* test involves a "burden-shifting framework." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "When proceeding under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis*, 918 F.3d at 1220–21. "If the plaintiff succeeds in making out a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions," at which point "the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination[.]" *Id.* at 1221.

derogatory statements regarding two Black detectives . . . , referring to them as 'a cancer,' 'a piece of shit,' 'having no reason being a cop,' and 'not team players,'" but directed no such comments "toward non-Black detectives." *Id.* ¶¶ 53–54. And Cook—along with "other African American officers"—were "informed through unofficial channels that they were effectively barred from GIU positions and that any applications would be disregarded." *Id.* ¶ 71.[3] Finally, Cook alleges that he was "remov[ed] from the detective squad and place[d] on patrol against his wishes," *id.* ¶ 32, which the Supreme Court has recognized as a cognizable injury in the discrimination context, *see Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 359 (2024) (holding that a police officer stated a claim of discrimination by alleging that "[s]he was moved from a plainclothes job in a prestigious specialized division giving her substantial responsibility . . . to a uniformed job supervising one district's patrol officers, in which she was less involved in high-visibility matters and primarily performed administrative work").

These allegations are sufficient to survive the motion to dismiss. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Ibid.*; *see also ibid.* ("Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."). The Supreme Court has thus "rejected the argument that a Title VII complaint requires greater particularity, because this would too narrowly constrict the role of the pleadings." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002) (cleaned up).

But Cook's allegations against the Sheriff are a different story. Nowhere in the Amended Complaint does Cook describe *any* discriminatory conduct *after* January 2025—when he became an employee of the Sheriff. Nor does the Amended Complaint attribute any discriminatory conduct to employees of the Sheriff, unlike it does to the MDC officers. *See* Motion at 2 ("The Amended

[3] Neither the Amended Complaint nor the parties' briefing defines "GIU."

Complaint now acknowledges that [the] Plaintiff was a County employee until January 2025 and only then became a Sheriff employee. Yet every factual allegation that identifies a date concerns events in 2024. As to the Sheriff, [the] Plaintiff alleges only that earlier conduct was somehow 'continued,' without identifying any post-transition act, decisionmaker, or actionable conduct. That is not a factual allegation.").

Cook insists that he's stated a claim as to the Sheriff because "[t]he pleading [ ] alleges that [Cook] was subjected to ongoing punitive transfers, suspensions, demotion, loss of pay and benefits, and a continuing hostile work environment during the period of the Sheriff's involvement." Response at 13. But these are conclusory allegations that do nothing more than outline the elements of a discrimination claim. And simply alleging that discrimination "continued" after Cook switched employers—with *no* factual support—isn't enough to state a claim. *See* Amended Complaint ¶ 21 ("The discrimination and retaliation was engaged in by the County and then continued by the Sheriff."); *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009) ("The vague and conclusory nature of these allegations is insufficient to state a claim for relief, and will not do." (cleaned up)).

For all these reasons, we **DENY** the Motion as to Count III but **GRANT** the Motion as to Count IV. As to Count IV, we'll allow Cook one more opportunity to amend his complaint to make clear what *specific* conduct he attributes to the Sheriff. *See Arencibia v. AGA Serv. Co.*, 2022 WL 1499693, at *5 (11th Cir. May 12, 2022) ("[D]istrict courts should freely give leave to amend when justice so requires, [but] they need not grant leave to amend when such amendment would be futile." (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

## II. Title VII Retaliation

Title VII also "prohibits employers from retaliating against an employee 'because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made

a charge . . . under [Title VII].'" *Goolsby*, 2025 WL 3013403, at *3 (quoting 42 U.S.C. § 2000e-3(a)). "To state a plausible retaliation claim, a plaintiff must allege that: (1) [he] participated in an activity protected by Title VII; (2) [he] suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse action." *Velazquez v. Univ. of Miami*, 2026 WL 923358, at *10 (S.D. Fla. Apr. 6, 2026) (Altman, J.) (quotation marks omitted). "A materially adverse employment action is an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Ibid.* (quoting *Calicchio v. Oasis Outsourcing Grp. Holdings, L.P.*, 2022 WL 2761720, at *4 (11th Cir. July 15, 2022)). "And, to show a causal connection, the plaintiff must show that (1) the decision-maker knew of [his] protected activity, and (2) the protected activity and adverse action were not wholly unrelated." *Ibid.* (cleaned up).

Cook's retaliation claim against the Sheriff suffers from the same defect we identified in discussing his discrimination claim—*viz.*, he doesn't identify any retaliatory conduct that occurred while he was employed by the Sheriff. *See supra* § I pp. 4–5. He merely alleges that "retaliation was committed by the County and then the Sheriff when the Sheriff assumed the role as [his] employer." Amended Complaint ¶ 23. Cook also doesn't describe any protected activity he engaged in while employed by the Sheriff, detail any adverse employment actions that were taken against him after January 2025, or identify any relevant decisionmakers at the Sheriff's office. *See generally* Amended Complaint. Since his conclusory allegations that retaliation "continued" while he was employed by the Sheriff are insufficient to state a claim, we **GRANT** the Motion as to Count II.

With that aside, we'll examine Cook's retaliation claim against MDC. Cook satisfies the first two elements of a retaliation claim. *First*, he tells us that he "fil[ed] Internal Affairs and/or PCB complaints on February 1, 2024, and March 1, 2024," *id.* ¶ 55, complaining about "assignments given to Black male officers, including himself and [] the hostile work environment created by White and Hispanic male superiors who made racist comments," *id.* ¶ 17. Cook also alleges that he "filed an

EEOC Complaint in a timely fashion as required by Title VII." *Id.* ¶ 7. These acts constitute protected activity. *See Gerard v. Bd. of Regents of State of Ga.*, 324 F. App'x 818, 825 (11th Cir. 2009) ("Statutorily protected expression includes internal complaints of discrimination to superiors, as well as complaints lodged with the EEOC and discrimination-based lawsuits.").

*Second*, Cook claims that MDC subjected him to an adverse employment action. Specifically, Cook alleges that "Sgt. Brian Espinoso removed [Cook] from [the Crime Suppression Team ('CST')], placed him on desk duty without explanation, and enforced reassignment without notice." Amended Complaint ¶¶ 24, 61. For purposes of adjudicating the Motion, we'll assume that Cook's reassignment to desk duty involved a reduction in pay, prestige, or responsibility as compared with his previous assignment to "the detective squad." *Id.* ¶ 29. And, "[i]n a Title VII case, a transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige or responsibility." *Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000).[4]

The third element of a retaliation claim—causation—is where Cook falters. "Causation [ ] requires more than some sort of temporal proximity between the employee's complaints and the adverse employment action." *McCreight v. AuburnBank*, 117 F.4th 1322, 1339 (11th Cir. 2024). Cook must, at the very least, allege that a decisionmaker behind the adverse employment action (here, Sgt. Espinoso) knew about his protected activity. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1278 (11th Cir. 2008) ("In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." (cleaned up)). He doesn't do so here. None of Cook's allegations about his

[4] Cook also alleges that he was "suspended for 10 days[.]" Amended Complaint ¶ 24. But he never tells us whether his suspension was *with* or *without* pay. And this distinction matters. The Eleventh Circuit has held that "a simple paid suspension is not an adverse employment action," *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1267 (11th Cir. 2021), while "[s]uspension without pay is unquestionably an adverse employment action," *Hogan v. S. Ga. Med. Ctr.*, 749 F. App'x 924, 930–31 (11th Cir. 2018). But, because we find (for now) that Cook has identified an adverse employment action based on his reassignment to desk duty, we needn't concern ourselves with Cook's lack of clarity on this point.

internal complaints *or* Sgt. Espinoso's conduct suggest that Sgt. Espinoso was aware of Cook's protected activity. *See generally* Amended Complaint. The Defendants raise this deficiency in their Motion, *see* Motion at 8 ("[T]he pleading contains no factual allegations connecting the decisionmaker to the protected activity."), and Cook never addresses it—instead, he simply repeats his conclusory allegation that he was retaliated against "as a result of his protected activity," Response at 9; *see also* Reply at 6 ("[The] Response does not address this core deficiency. Instead, he repeats that he filed Internal Affairs and/or PCB complaints and references an EEOC charge. But neither the Amended Complaint nor the Response identifies who received those complaints, who reviewed them, whether the EEOC charge was communicated internally, or whether any individual responsible for the alleged adverse actions knew of that protected activity."). In fact, Cook claims that, "[i]f the Defendants cannot figure out what they did wrong and who did what, they just need to read the Amended Complaint, and it will spell it out for them." Response at 4. But, as we've said, the Amended Complaint does no such thing.

This isn't to say that Cook must *prove* causation at this stage of the litigation. But he must allege that Sgt. Espinoso (or any other relevant decisionmaker) *knew* about his protected activity. Because he hasn't, we **GRANT** the Motion as to Count I. As we did with the discrimination claim, we'll grant Cook leave to amend his retaliation claims to address the defects we've identified in this Order. *See Arencibia*, 2022 WL 1499693, at *5 ("[D]istrict courts should freely give leave to amend when justice so requires, [but] they need not grant leave to amend when such amendment would be futile." (citing *Foman,* 371 U.S. at 182)).

**III. Shotgun Pleading**

Finally, the Defendants argue that the entire Amended Complaint must be dismissed as a shotgun pleading for two reasons. *First*, the Defendants maintain that, because "[e]ach count realleges paragraphs 1 through 63 in full," "every claim . . . rests on the same undifferentiated set of allegations."

Motion at 4–5. We disagree. While the Amended Complaint is hardly a model of clarity, "a complaint isn't a shotgun pleading merely because each count incorporates all the *facts*. Incorporation only becomes a problem when each count adopts the allegations of every preceding *count*." *Quintero v. Miami-Dade Cnty.*, 2026 WL 1884321, at *3 n. 3 (S.D. Fla. July 1, 2026) (Altman, J.) (citing *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021)).

*Second*, the Defendants claim that the Amended Complaint is a shotgun pleading because Cook fails "to distinguish between Defendants." Motion at 5; *see also ibid.* ("Although the counts are now labeled separately, the factual allegations, the only place where operative facts are pled, consistently lump the County and the Sheriff together."). We're sympathetic to this concern and have already addressed it by dismissing both counts against the Sheriff. So we'll warn Cook that, if he files a second amended complaint, he must clearly distinguish between MDC's actions and the Sheriff's. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (describing the "fourth" type of shotgun pleading as one in which the plaintiff "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions").

## Conclusion

After careful review, therefore, we **ORDER** and **ADJUDGE** as follows:

1. The Motion to Dismiss [ECF No.43] is **GRANTED in part** and **DENIED in part**.
2. Counts I, II, and IV are **DISMISSED** *without prejudice* and with leave to amend.
3. All other relief sought in the Motion to Dismiss is **DENIED**.
4. If Cook chooses to file a second amended complaint addressing the deficiencies we've identified in this Order, he must do so by **September 11, 2026**. Any amendments after that date will not be accepted. And any counts that fail to remedy the defects we've identified here will be dismissed with prejudice and without further notice.

**DONE AND ORDERED** in the Southern District of Florida on August 27, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record